UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

UNITED STATES OF AMERICA,

        Plaintiff,

v.                                           Case Number 09-CR-135

KELLY LACY

        Defendant

DEFENDANT'S MOTION FOR RECONSIDERATION

The defendant, Kelly Lacy, by attorney Joshua D. Uller, renews his motion to dismiss the indictment in this case. Lacy brings this motion based on the United States Court of Appeals for the Seventh Circuit's recent decision in *United States v. Skoien*, No. 08-3770, 2009 WL 3837316 (7th Cir. Nov. 18, 2009)

In its Decision and Order dated November 6, 2009, this Court adopted Magistrate Judge Gorence's recommendation that Lacy's Motion to Dismiss be denied (Docket No. 32). In his motion and objection, Lacy argued that § 922(g)(3) violated his Second Amendment right to keep and bear arms in light of the United States Supreme Court's decision in *District of Columbia v. Heller*, 128 S. Ct. 2783 (2008). (Docket Nos. 15, 16, 30).

This Court disagreed, and found the ban on possession of firearms by unlawful users of drugs to be one of the permissible "longstanding prohibitions on the possession of firearms" discussed in *Heller*. The Court cited several district court decisions striking down post-*Heller* challenges to 922(g) prosecutions. The

tone of all decisions is consistent, "no court has, even under an individual rights interpretation of the Second Amendment, found 18 U.S.C. § 922(g) constitutionally suspect." *United States v. Robinson*, No. 07-CR-202, 2008 WL 2937742 (E.D. Wis. 2008). On November 18, 2009, approximately two weeks after this Court's decision, the Court of Appeals issued its decision in *Skoien*.

Steven Skoien was convicted in Wisconsin Circuit Court of a domestic violence related misdemeanor battery and placed on probation. *Skoien,* at 3. While on probation, he was found to be in possession of a hunting rifle, ammunition, a blaze orange hunting jacket, a state issued tag for a gun deer kill bearing his name, and a deer carcass. *Id* at 4. He was indicted by a grand jury in the Western District of Wisconsin and subsequently convicted of violating 18 U.S.C. § 922(g)(9), which prohibits individuals convicted of misdemeanor domestic violence offenses from possessing firearms. *Id*. Skoien moved the district court to dismiss the indictment on the grounds that post-*Heller*, 922(g)(9) was unconstitutional. The district court disagreed and denied his motion. *Id*.

Skoien appealed the district court's order. The Court of Appeals reversed, adopting a two-part test:

> First, some gun laws will be valid because they regulate conduct that falls outside the terms of the right as publicly understood when the Bill of Rights was ratified. If the government can establish this, then the analysis need go no further. If, however, a law regulates conduct falling *within* the scope of the right, then the law will be valid (or not) depending on the government's ability to satisfy whatever level of means-end scrutiny is held to apply; the degree of fit required between the means and the end will depend on how closely the law comes to the core of the right and the severity of the law's burden on the right. *Id* at 10

The court found the hunting shotgun possessed by Skoien was consistent with "the right as publicly understood when the Bill of Rights was ratified". Applying the second part of the test, the court analyzed the nature of the right asserted by Skoien. *Id* at 14.

The court differentiated between the right asserted by Heller (one of self-defense within the home) and that asserted by Skoien (one of hunting), despite finding both to be within "the terms of the right as publicly understood when the Bill of Rights was ratified." *Id* at 15. The primary Second Amendment right identified in *Heller*, "that of 'law-abiding, responsible citizens to use arms in defense of hearth and home' should receive exacting scrutiny." *Id* at 15, citing *Heller* at 2821. The court noted however, that to apply strict scrutiny across the board would be "obviously incompatible with *Heller*'s dicta about 'presumptively lawful' firearms laws." *Id* at 16. The right asserted by Skoien called for a "more lenient standard of review", or intermediate scrutiny because the "Second Amendment challenge in this case is several steps removed from the core constitutional right identified in *Heller*". *Id* at 17.

In articulating the intermediate scrutiny analysis applicable to Second Amendment challenges, the *Skoien* court stated, "for gun laws that do not severely burden the core Second Amendment right of self defense there need only be a reasonable fit between an important governmental end and the regulatory means chosen by the government to serve that end". *Id* at 22. In this analysis, the burden shifts to the government to "affirmatively establish the reasonable fit that the test

requires. In other words, "the public benefits of the restrictions must be established by evidence, and not just asserted[;] … lawyers' talk is insufficient." " *Id* at 23, citing *Annex Books, Inc. v. City of Indianapolis*, 581 F. 3d 460, 463 (7th Cir. 2009).

Preventing domestic gun violence has long been important government interest, and Skoien did not argue otherwise. The issue was whether the government established a 'reasonable fit' between the its means and end, a question the court was unable to answer on the record as it existed. *Skoien* at 23. The government had not presented any evidence supporting its means, instead relying on *Heller*'s language about presumptively lawful restrictions. *Id*. Accordingly, the court vacated Skoien's conviction.

The court did provide the district courts with additional guidance, noting that intermediate scrutiny analyses will at times tolerate overinclusive laws, and that the courts would have to determine whether the restrictions were too overinclusive. It noted many aspects of 922(g)(9) that it believed were overinclusive, and other ways in which it was not, but did not answer the ultimate questions of whether 922(g)(9) was either overinclusive or unconstitutional. *Id* at 25-26.

In both the Magistrate's recommendation and this court's Decision and Order, it was noted that despite *Heller*, no court had yet found any 922(g) restriction "constitutionally suspect." That trend appears to be changing however, as the *Skoien* court noted that several other district courts have recently found

922(g) restrictions "constitutionally suspect". See e.g. *United States v. Miller*, 604 F. Supp. 2d 1162 (W.D. Tenn. 2009) (applying an intermediate scrutiny analysis to a § 922(g)(1) challenge), *United States v. Marzzarella*, 595 F. Supp. 2d 596 (W.D. Pa. 2009) (applying intermediate scrutiny to a 922(k) challenge), and United *States v. Engstrum*, 609 F. Supp. 2d 1227 (D. Utah 2009) (applying strict scrutiny to a 922(g)(9) challenge).

**1) Appropriate level of Scrutiny**

On February 19, 2009, agents from the Bureau of Alcohol, Tobacco, and Firearms ("ATF"), seized a .223 caliber rifle and approximately twenty grams of marijuana from Lacy's home. Lacy kept the firearm in his home, except for the rare occasion when it was used for the purpose of deer hunting.

Lacy's claim therefore falls within the "scope of the Second Amendment as understood at the time of its adoption." *Skoien* at 12. As such, it must receive either a strict or intermediate scrutiny analysis, depending on the nature of the right asserted.

At a minimum, Lacy's challenge should receive intermediate scrutiny. His right to bear arms for purposes of hunting, though not the core right protected by the Second Amendment, is clearly entitled to intermediate scrutiny based on *Skoien*. However, Lacy's case is distinguishable from *Skoien* in certain key respects.

Skoien was borrowing a firearm solely for the purpose of hunting. The shotgun found by his probation officer was located in the bed of a truck parked

outside his home, along with a blaze orange hunting jacket, and a deer carcass. Skoien admitted that he had borrowed the firearm from his father to go deer hunting. Skoien made no argument that he possessed the firearm for purposes of defending himself or his home, nor would the facts of his case support such a claim.

On the contrary, while hunting was clearly one of the intended uses of Lacy's firearm, as the court noted in *Skoien*, "a long gun used primarily for hunting is obviously useful for defensive purposes as well." *Id.* Lacy kept the firearm in his home, "where the need for defense of self, family, and property is most acute". *Heller* at 2818. Lacy's possession was of the firearm was also constructive, not actual possession like that in *Skoien*. Lacy's possession of the rifle in his home is the core right protected by the Second Amendment. For this reason, his challenge to 922(g)(3) must receive strict scrutiny.

**2) Government's Burden**

Under either a strict or intermediate scrutiny analysis, the government bears the burden of showing that its means of restricting one's constitutional rights are appropriately tailored to achieve an important or compelling government interest.

In this case, the government has presented no evidence or argument that its interest is either important or compelling, or that 922(g)(3) is appropriately tailored to accomplish its objective. Similar to *Skoien*, the government has relied on blanket assertions and 'lawyers' talk' without either case law or facts to support its position. In its Response, the government asserts "*it is well established* that

unlawful users of controlled substances pose a risk to society of they are permitted to possess firearms." Response at 2, emphasis added (Docket No. 23). The government cites no case law or statistical evidence to support its position, instead citing general case law that either has nothing to do with the "unlawful user" provision of 922(g)(3) or dicta discussing the basic intent of gun control legislation. See e.g. *Huddleston v. United States*, 415 U.S. 814, 824 (1974) ("The principal purpose of the federal gun control legislation … was to curb crime by keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetency", internal citations omitted). Though the government asserts that the danger posed by unlawful drug users in possession of firearms is well-established, it must present evidence to support its position. It has not done so. Nor has it shown that the unlawful user provision of 922(g)(3) helps accomplish the governmental interest, irrespective of how narrowly tailored it may or may not be.

   a) **Important Government Interest**

The government's articulated interest in enforcing 922(g)(3) is "keeping guns out of the hands of drug users" Response, 2-3. It has not argued this interest is either compelling or important. The legislative history behind the GUN CONTROL ACT OF 1968, which originally enacted 922(g)(3), identifies Congress' intent as keeping firearms out of the hands of those not legally entitled to possess them because of age, criminal background, or incompetence, with the ultimate goal of curbing gun violence. GUN CONTROL ACT OF 1968, Publ. L. No. 90-618,

Title I, s. 102, 82 Stat. The dearth of legislative history behind the unlawful user provision of 922(g)(3), however, makes it difficult to argue that the government's interest in keeping guns out the hands of drug users is compelling or important.

In addition to presenting evidence that its interest is important or compelling, the government must also present evidence that 922(g)(3) is appropriately tailored to achieve that interest. How much evidence and to what extent depends on the analysis to be applied.

### b) Intermediate Scrutiny

Because Lacy's challenge falls within the "scope of the Second Amendment as understood at the time of its adoption", *Skoien,* at 12, his challenge must receive, at a minimum, intermediate scrutiny. In an intermediate scrutiny analysis, the government is generally required to establish that the challenged law is substantially related to an important governmental interest. *Craig v. Boren*, 429 U.S. 190 (1976). In Second Amendment challenges, intermediate scrutiny requires the government to establish "a reasonable fit between its important government interest … and the means chosen to advance that interest." *Skoien*, at 27.

A reasonable fit requires the regulation's scope to be proportionate to the interest it serves. *Bd. Of Trs. Of State Univ. of N.Y. v. Fox*, 492 U.S. 469, 477 (1989). Though this fit need not be "perfect" or the least restrictive means of achieving the important government interest, the means must be "narrowly tailored to achieve the desired objective." *Id* at 480.

Assuming that the government's interest is important, its means of achieving that interest must be narrowly tailored so as to accomplish the reasonable fit.  In its current form, 922(g)(3) is not a reasonable fit.  It provides a blanket prohibition on the possession of firearms by both drug addicts and "unlawful users of controlled substances".  Title 21 U.S.C. § 802 defines an addict as "any individual who habitually uses any narcotic drug so as to endanger the public morals, health, safety, or welfare, or who is so far addicted to the use of narcotic drugs as to have lost the power of self-control with reference to his addiction."   The code does not define an unlawful user of a controlled substance, the provision under which Lacy is being prosecuted.

The government has not introduced any evidence or made any argument that the unlawful user provision of 922(g)(3) accomplishes the general goal of 922(g) restrictions.   The blanket prohibition fails to narrowly tailor the government's means of achieving its desired objective.  It is not simply overinclusive, but all-inclusive.   While a somewhat overinclusive statute may be tolerated under an intermediate scrutiny analysis, where the government cannot show that the restriction helps accomplish the important governmental interest, overinclusiveness cannot be tolerated, especially when dealing with one's core Second Amendment protections.

Without addressing whether the 'drug addict' provision of 922(g)(3) is a reasonable fit or if it helps achieve a governmental goal, its language has some semblance of being narrowly tailored.  One so addicted to a substance that they

"have lost the power of self-control" is quite different from someone who occasionally smokes marijuana. The 'unlawful user' provision has no language limiting its far-reaching scope. In fact, it has no definition at all, further indicating the lack of a 'reasonable fit'. Controlled substances come in many forms with many side effects. The unlawful user provision of 922(g)(3) seemingly includes all controlled substances, appears to exist permanently, and without any nexus between drug use and gun possession.

Though Lacy argues that this Court should apply a strict scrutiny to his challenge, 922(g)(3) fails to pass constitutional muster even under an intermediate scrutiny analysis

   c) **Strict Scrutiny**

Under strict scrutiny, the law must be narrowly tailored to achieve a compelling governmental interest. *Grutter v. Bollinger*, 539 U.S. 306, 326 (2003). *Skoien* mentions many of the reasons 922(g)(9) would likely fail under a strict scrutiny analysis. The ban exists permanently without expiration, it does not permit one to reacquire their gun rights upon an adequate showing the individual no longer poses a risk, and it does not allow any exceptions. *Skoien*, at 26.

On its face, 922(g)(3) would fail to pass constitutional muster for the reasons articulated in *United States v. Herrera* 313 F. 3d 882, 889 (5th Cir. 2002):

> "the words 'unlawful user' completely fail to pass … strict scrutiny because (1) there is no statutory definition of such words; (2) there is no common and ordinary meaning to such words; (3) there is nothing in the legislative history which would indicate what Congress had in mind by using such words; and (4) there is nothing from which a court or jury can determine: (i) what quantities of (ii) what controlled substances, in (iii) what time

frame on (iv)what occasions, and with (v) what side affects are necessary to constitute 'an unlawful user'." *Herrera,* 313 F. 3d at 889 (J. DeMoss, dissenting).

The analysis need not go further. However, were the court to scrutinize the statute as applied to Lacy, the government must show that its compelling interest (presumably reducing gun violence) is furthered by prohibiting someone, who on prior occasions has smoked and possessed marijuana, from keeping a hunting rifle in his home. To meet strict scrutiny, the government must show that Lacy's prior use and possession of marijuana incapacitated him to the extent that his constructive possession of a licensed hunting rifle in his home creates such a significant public safety risk that it overcomes his Second Amendment right to keep and bear arms. It clearly does not.

For the foregoing reasons, Lacy respectfully asks that this Court reconsider its order November 6, 2009 order and dismiss the indictment.


Dated: December 3, 2009

          Respectfully submitted,
          LAW OFFICE OF JOSHUA D. ULLER
          Attorneys for the Defendant

      By: /s/ Joshua D. Uller
         Joshua D. Uller
         State Bar No.: 1055173

757 N. Water Street, Suite 300
Milwaukee, WI 53202
T 414-839-3403
F 414-763-3698
www.ullerlaw.com